Joshua S. Van de Wetering
Van de Wetering Law Offices, P.C.
512 E. Front Street
P.O. Box 7575
Missoula, MT 59807
(406) 543-6577
josh@vdwlaw.net
Montana Bar #3918

Francisco A. Duarte
Fury Bailey, P.S.
710 – 10th Ave. E.
P.O. Box 20397
Seattle, WA 98102
Phone: (206) 726-6600
Fax: (206) 726-0288
Fad@furybailey.com
WSBA# 24056

Attorneys for Petitioner

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, | Cause No. CR-11-120-JCC |
| Plaintiff, | |
| -vs- | **MOTION TO MODIFY TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i)** |
| MICHAEL MURPHY, | |
| Defendant. | |

COMES NOW Michael Murphy, by and through his counsel of record, and

hereby moves this Honorable Court for its Order modifying Mr. Murphy's term of

imprisonment to time served.  Mr. Murphy makes the motion because at 72 years of age, he is at substantial risk of suffering severe consequences if he were to contract Covid-19, and his performance in prison demonstrates that under the 18 U.S.C. 3553(a) factors he should be released.   He is not a danger to the public, he is no longer in need of rehabilitation having earned a college degree while incarcerated, and the eight plus years he has spent in federal custody are sufficient to promote respect for the law, provide deterrence and punish Mr. Murphy.

Counsel for the Government, Mr. Lombardi, has been contacted regarding this motion and opposes it.

**RELEVANT FACTS**

Mr. Murphy was convicted in this Court of Conspiracy to Distribute Controlled Substances and Conspiracy to Commit Money Laundering on March 23, 2012, and was sentenced to a prison term of 144 months followed by a supervised release term of 5 years.  He is currently projected to be released on July 27, 2022, meaning that as of this writing, he has served 103 months, with 21 months to go, or 83% of his sentence.

Mr. Murphy has been anything but idle during his time in prison.  He has completed dozens of classes while in prison, everything from Accounting and International Business to Landscape Design, Creative Writing, and Introduction to Japanese.  He made the Dean's list and completed an Associates Degree.  Mr.

Murphy also worked, had no disciplinary issues, and was entrusted repeatedly with being on his own outside the prison. Documents supporting these activities are attached.

Mr. Murphy is still classified as an inmate, though he was moved from imprisonment at FPC Yankton, S.D. to the Residential Reentry Management (RRM) field office because of Covid-19, and lives courtesy of a generous friend in his friend's home in California wearing an ankle monitor. The living situation protects Mr. Murphy for the time being, but is tenuous at best. The Bureau of Prisons could return him to literal custody at any time, and/or Mr. Murphy's friend's generosity could (understandably) run out at some point, requiring Mr. Murphy's return to custody. Finding another place to live would be particularly challenging for Mr. Murphy. He no longer has connections in the Seattle area, and while he would prefer to reside in Montana to be near his daughter – and would be able to do so if he were on supervised release – because there is no Bureau of Prisons RRM in Montana that is not an option for him.

A return to prison would almost undoubtedly expose Mr. Murphy to the virus and likely cause him to catch the disease it carries. As of this writing the Bureau of Prisons has tested 68,668 prisoners, with 17,137 testing positive. https://www.bop.gov/coronavirus/, That is a positivity rate of just short of 25%. The World Health Organization (WHO) recommends that countries which have

"introduced large scale public health and social measures (PHSM)" not relax them until the positivity rate reflected in testing drops below 5% for 14 straight days. https://www.who.int/publications/i/item/public-health-criteria-to-adjust-public-health-and-social-measures-in-the-context-of-covid-19.  And there is no reason to expect the incidence of infection to go down soon.  Yesterday the United States saw nearly 90,000 new cases in a single day, part of a sharp upward trend that sets new records every day and shows no sign of abating. https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

Moreover, within that picture of raging cases, prisons are even worse. With prisoners sharing living, eating, and hygiene facilities, "Covid-19 cases are proportionally higher and have spread faster in prisons than in the outside population, said Brendan Saloner, an associate professor at Johns Hopkins Bloomberg School of Public Health, who is studying the issue." https://www.washingtonpost.com/nation/2020/08/24/prisoners-guards-agree-about-federal-coronavirus-response-we-do-not-feel-safe/.  Those conclusions are only underscored by a review of one BOP facility (Lompac) by the DOJ Inspector General which reported that "In response to the working draft of this report, the BOP stated that maintaining adequate levels of medical staff in BOP institutions was an ongoing nationwide challenge."  The report also noted insufficient regular staff, insufficient masks and PPE and untimely use of what there was, insufficient

screening, and a lack of institutional communication and leadership.

https://oig.justice.gov/sites/default/files/reports/20-086.pdf.

The novel corona virus and its accompanying disease, Covid-19, seem surely to be with us for the foreseeable future, even assuming a successful vaccine is just around the corner.  When asked if he thought we could be past Covid-19 by 2022, Dr. Anthony Fauci, head of the National Institute for Allergy and Infectious Diseases, had the following to say:

> "I don't think we're going to eradicate it.
>
> We may not completely eliminate it, but if you get it down to such a very low level, and enough of the population is protected — either by a vaccine or by previously having been infected — then you'll develop a degree of herd immunity that you won't have an outbreak.
>
> So when people say spring of 2022, I think that's quite reasonable, because I think that if we deploy a vaccine and we implement public health measures, I think it might even be sooner than that. But 2022 I think is a pretty good bet."

https://www.businessinsider.com/fauci-interview-how-to-stay-healhy-get-by-until-2022-2020-9.  That means that we can expect the United States to be substantially recovered from this pandemic only about the time Mr. Murphy is scheduled to be released from prison anyway.

If Mr. Murphy were returned to prison and caught the virus, he would be in serious danger.  The United States Centers for Disease Control (CDC) reports that

for men of his age (71), there is a substantial increase in both deaths and hospitalizations from Covid-19.  Persons in the 65-74 age group, for instance (Mr. Murphy's age group), are at a 5 times higher risk for hospitalization, and a whopping 90 times greater risk of death than a person in the 18-29 age group. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html.  It is notable, also, that Mr. Murphy, at 71 is on the higher end of the 65-74 age-group.  The next higher age group, 74-84 is at 8 times higher risk of hospitalization and 220 times higher risk of death, than the comparison group, 18-29 year-olds.  Although Mr. Murphy is in good health for a man his age, it is not unreasonable to estimate that he has around a 7 times greater likelihood of being hospitalized with Covid-19 and around a 200 times greater chance of dying if he catches Covid-19 than if he were in his twenties.

## ARGUMENT

Under 18 U.S.C. § 3582(c)(1)(A)(i) a district court may modify an inmate's time of incarceration if there are "extraordinary and compelling reasons" that warrant it.  Either the Bureau of Prisons (BOP) or the inmate may file the motion, but if the BOP refuses to file motion or ignores a request from the inmate to file, the inmate may file directly in the district court.  Many courts around the country

have concluded in light of Covid-19 and the BOP's general failure to respond to inmate requests for motions, that the requirement to exhaust administrative remedies can and should be waived.  *See, e.g. Abdallah v. United States, E.D. Virginia, 4:15-cr-18(3), June 4, 2020,* holding that all three exceptions to the exhaustion requirement – futility, inadequate relief, and undue prejudice -- apply to 3582(c)(1)(A) motions during the Covid crisis, and gathering cases.  The statistics continue to bear out the *Abdallah* court's conclusion.  The Bureau of Prisons has received over 10,000 requests to move for release and has rejected or not responded at all to over 98% of them. [https://www.themarshallproject.org/2020/10/07/thousands-of-sick-federal-prisoners-sought-compassionate-release-98-percent-were-denied](https://www.themarshallproject.org/2020/10/07/thousands-of-sick-federal-prisoners-sought-compassionate-release-98-percent-were-denied).  Moreover, Mr. Murphy because he is in the limbo state of being an inmate out of prison, there is no longer a "warden" to go to as the statute requires.   Given that the BOP is inundated with cases among their staff as well as their inmates, it is perhaps understandable that they have not been able to process these requests.  In light of Mr. Murphy's status and the reality of the BOP's responses, though, this Court should waive the 30-day requirement and consider Mr. Murphy's motion.

Under the statute prisoners may be released if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(C)(1)(A)(i).  The sentencing guidelines offer a definition of "extraordinary and compelling reasons" that

includes a catch-all provision that provides that a court may reduce the sentence if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). USSG § 1B1.13, note 1(D). Without such a catch-all provision a prisoner yet to catch a deadly disease would not be able to escape that future – a punishment far greater than contemplated by his sentence – in the unlikely event of something like a global pandemic.

That unlikely event, of course, is exactly what is happening now, an event not seen on this planet in a hundred years. Indeed, it is hard to imagine anything more "extraordinary" and "compelling" than a once-every-hundred years event which has in the space of less than 9 months has become the third leading killer of Americans, and is far from over. Many commentators have noted that this is a time when all people must take heightened responsibility for their own health and the health of their communities. That is all Mr. Murphy asks when he seeks reduction of his sentence – an opportunity in the face of a pandemic to protect himself and be with his loved ones.

Finally the statute requires that an inmate seeking sentence reduction meet be amenable to release after consideration of the sentencing factors in 18 U.S.C. 3553(a). That part is easy. With respect to the nature of the offense, Mr. Murphy

never had a substantial role in the distribution, serving only as a "driver" of marijuana going one direction and money going the other.  Notably, in today's world transportation of marijuana is no longer even illegal under many circumstances, and Mr. Murphy has already served a substantial sentence for his actions.  The sentence served also provides just punishment, promotes respect for the law, and arguably over-reflects the seriousness of the crime, at least as society's view of that crime has evolved since Mr. Murphy's conviction.  8 years behind bars is surely an adequate deterrent, there is no need to protect the public from Mr. Murphy as he is not and has never been a danger to the public, and he has exhausted practically every opportunity for rehabilitation that has been available to him.  Indeed, if the goal of the statute is truly to promote respect for the law, releasing Mr. Murphy far better serves that goal that keeping him incarcerated does.

      Quite simply, there is no good reason for Mr. Murphy to be behind bars.  It does not serve the public, it does not serve the concept of "justice," it does not serve Mr. Murphy.  Mr. Murphy respectfully  asks this Court to apply 18 U.S.C. § 3582(C)(1)(a)(i) and reduce his sentence to time served.

      DATED this 30th day of October, 2020.

*/S/ Joshua S. Van de Wetering*
Joshua S. Van de Wetering
Attorney for Defendant/Petitioner

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October, 2020, a copy of the foregoing document was served on the following persons by the means indicated below:

      CM/ECF                                 1-2

1. Clerk, U.S. District Court
2. Vince Lombardi, United States Attorneys Office

                        */S/ Joshua S. Van de Wetering*
                        Joshua S. Van de Wetering
                        Attorney for Defendant